Filed 7/16/14  In re D.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re D. R., a Person Coming Under the Juvenile Court Law. | C074380 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES , | (Super. Ct. No. J35822) |
| Plaintiff and Respondent, | |
| v. | |
| MEGAN B., | |
| Defendant and Appellant. | |

Megan B., mother of the minor, appeals from orders of the juvenile court selecting a permanent plan of guardianship.  (Welf. & Inst. Code,[1] §§ 366.26, 387.)  Appellant contends the trial court erred in granting guardianship to the foster parents because the

---

[1]     Further undesignated statutory references are to this code.

1

placement did not comply with the placement preferences of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and there was no good cause to deviate from the preferences. We affirm.

FACTS

Following an incident of domestic violence in May 2011, which placed three-month-old D. at risk of physical harm and resulted in the parents' arrest, the Butte County Department of Employment and Social Services (Department) filed a petition alleging the minor was at risk due to the parents' domestic violence and mother's history of mental health and substance abuse issues. The juvenile court ordered the minor detained and in August 2011 sustained the petition as amended.

The disposition report, filed in August 2011, recommended services for the parents. The report stated father claimed Indian heritage in the Mono tribe and was enrolled in the North Fork Rancheria branch of the tribe. The tribal representative confirmed the minor's eligibility for membership in the tribe and told the social worker she was waiting for father to send completed tribal enrollment papers and additional documentation from the Department. The report further stated the maternal grandmother had been considered for placement but was denied and had filed a grievance. The minor was initially placed in shelter care then moved to a foster home licensed by the county because there was no identified ICWA home available. Subsequently, an Indian home became available but the parents requested that the minor remain in the current placement. The Indian expert's declaration noted that the minor's placement was not within the ICWA placement preferences and the Department should continue to work with the tribe on the issue. At the disposition hearing, the court adopted the Department's recommendation and found that the ICWA applied.

Visit logs for mother's visits from July to November of 2011 showed that, while mother occasionally had positive and appropriate interaction with the minor, she generally was unwilling or unable to take direction from the in-home educator and social

2

worker on techniques for care of the minor and needed assistance to care for the minor. Mother often had difficulty with age-appropriate expectations when interacting with the minor.

The review report filed in March 2012 recommended further services for mother and termination of father's services. The report stated the minor was a client of the Far Northern Regional Center and began services in December 2011. During the reporting period, the minor was moved from his previous foster home. Again, no identified ICWA homes were available and, in keeping with the parents' request, the minor was placed in the Paradise area. Mother showed some improvement in visits but continued to lack focus and needed frequent prompts.

A status review report filed in August 2012 recommended termination of services for both parents. Mother had continued with services but had not made progress in her ability to parent the minor. Visits were still supervised and mother still was unable to attend to the basic needs of the minor. The minor was making developmental progress as a result of the intervention services of the Far Northern Regional Center. He was diagnosed with a neurobehavioral disorder, alcohol exposed, and still tested below his developmental age range. The service providers contemplated increasing his services to five times a week. The minor remained in the Paradise area foster home and was doing well there. The current foster parents were interested in adoption. The Department sent a relative placement packet to a paternal aunt and attempts were also made to contact various maternal relatives. At the combined six- and 12-month review hearing in September 2012, the juvenile court adopted the Department's recommendation, terminated services, and set a section 366.26 hearing.

The January 2013 adoptions worker's report for the section 366.26 hearing recommended termination of parental rights and a permanent plan of adoption. The minor had made significant developmental and emotional improvement but still needed ongoing services. The minor had been in the current placement for a year and no ICWA

3

compliant home was available. The current caretakers were able to meet the minor's special needs and were identified by the Department as a potential adoptive family. Mother hoped for a permanent plan of tribal customary adoption with the maternal grandmother. The adoptions worker made two attempts to discuss tribal customary adoption with Theresa Sam, the tribal representative. Sam reported that the tribe wanted the minor adopted only by a family member but the tribal council had not yet met to discuss the case due to the death of a council member. The adoptions worker was unable to discuss tribal customary adoption with Sam because Sam terminated each telephone call before the discussion could take place. The Department's attempts to identify an appropriate family placement were unsuccessful and the paternal aunt withdrew her application, having decided she did not have the time to meet the minor's needs.

The Indian expert's report for the section 366.26 hearing stated that Sam said she had not spoken to the adoptions worker and felt the Department was not working with the tribe. Sam believed the minor should be returned to mother as long as mother lived with a relative who could assist her in parenting the minor and identified two relatives in Southern California who were interested in care of the minor. Sam told the Indian expert that if the minor could not be returned to the mother, the tribe wanted a permanent plan of guardianship. In the expert's opinion, continued custody of the child by the parents was likely to result in serious emotional or physical damage to the child based on mother's failure to make significant progress in services and her inability to meet the minor's needs. The expert noted that the Department had contacted the relatives identified by mother, father, and the maternal grandmother, who also informed the Department there were no other interested relatives. Further, while the Department contacted the tribal representative for placement options, the tribe did not identify any viable relative or Indian home options. The expert noted that the section 366.26 report did not specify facts which supported good cause to avoid the placement preference of the ICWA.

4

In February 2013, the Department filed a list of relatives of the minor who had been contacted about possible placement. The letters had been returned to the Department for three relatives, the Department was awaiting response on five, one relative wanted the minor to remain as placed and one couple declined placement.

A review report filed in April 2013 stated father had been arrested and was in custody in Reno, Nevada. Mother was living with the maternal grandmother, said she had about a year of sobriety, and wanted the minor returned to her care so she and the maternal grandmother could care for him. The minor remained in the same foster placement, his emotional state was stabilizing and had progressed to the point he now required only weekly intervention services. The report detailed the Department's ongoing unsuccessful efforts to find a relative placement. The Department also assessed a family friend for placement but the individual did not complete the process. The adoptions worker went to Fresno to meet with Sam, mother, and mother's cousin. At that meeting, Sam represented that the tribal council supported legal guardianship with the current foster family if the minor could not be placed with a family member. The cousin was given the opportunity to come to the Department offices to get a placement application but she did not do so. The Department also reviewed the assessment of the maternal grandmother and the denial of the application, noting that the denial was upheld in the grievance procedure. The current foster family was willing to adopt the minor but would accept legal guardianship in order to keep the minor in their care.

An addendum report in May 2013 recommended guardianship with the current foster parents. In April 2013, the adoptions worker met with Sam who said the tribe's preference continued to be adoption by the maternal grandmother or other relative, but the tribe was willing to agree to a permanent plan of guardianship with the current caretakers if no relative was approved. The relative assessment was closed due to lack of interest or lack of response by the relatives contacted. Accordingly, no relative was

5

approved for placement. The foster parents still wanted to adopt the minor but were willing to agree to guardianship in light of the tribe's wishes.

At the section 366.26 hearing in June 2013, the Indian expert testified there was evidence beyond a reasonable doubt that continued parental care was detrimental to the minor because mother continued to be unable to meet minor's needs and father had not engaged in services. The expert also was of the opinion that there was good cause to avoid the ICWA placement preferences based on lack of alternatives. The expert said the tribe preferred the minor be placed with the maternal grandmother, but she had been denied placement and her grievance was also denied so the Department would not be able to place the minor with her.

The current adoptions worker tried to confirm the tribe's position on guardianship with Sam but his call was not returned. He was confused about the tribe's position because Sam had agreed to guardianship with the foster parents but at the same time favored a placement with the maternal grandmother which had long been unavailable due to the previous denial of placement. The adoptions worker believed the denial occurred in April 2012. He believed that the maternal grandmother could have reapplied after a year, but to his knowledge, she had not done so.

The permanency worker testified she understood that the tribe currently had two preferences for placement. The tribe's first preference was that the minor be placed with the maternal grandmother; the second was that the tribe supported guardianship with the current caretakers if the minor could not be placed with the maternal grandmother. No other relative was currently seeking placement of the minor. The maternal grandmother was denied placement of the minor for several reasons and the denial was upheld in a grievance hearing. The reasons for the denial included the maternal grandmother's child welfare history of substantiated neglect in 2004 and again in 2005. There were three substantiated allegations against the maternal grandmother of caretaker absence and incapacity in 2005. The maternal grandmother had a voluntary case with her daughter in

6

2005, after leaving the daughter at a mental health facility and refusing to pick her up. The maternal grandmother was a payee for mother and on two occasions refused to give her money. Further, the maternal grandmother was convicted of being drunk in public in 2005, was ineligible for a criminal waiver because she had not been off probation for five years at the time of the application, and had acted violently while on probation. There were also concerns about the dysfunctional family dynamics. The permanency worker did not know if the maternal grandmother ever reapplied for placement consideration. The permanency worker testified that the foster parents were willing to speak with the tribe and participate in tribal services for the minor. The foster mother told the worker she tried to call Sam twice about possible services, but her calls were not returned.

The maternal grandmother testified she was denied placement of the minor and appealed the decision but lost the appeal. The maternal grandmother stated she asked a person identified as "Wendy" whether she could reapply. Although willing to reapply for placement consideration, the maternal grandmother never did so because she was told she could not.

Theresa Sam testified the tribe recommended placement of the minor with the maternal grandmother and was waiting for signatures on a tribal resolution on placement with the maternal grandmother. Sam acknowledged that the tribal council had not yet voted on the resolution. Sam stated that the tribe's first choice for the minor's placement had always been with the maternal grandmother. Sam said the tribe was no longer supportive of the foster family due to communication issues. Sam acknowledged the tribe had supported placement with the foster parents because there were no other families available. In her opinion, there was no good cause to deviate from the ICWA placement preferences.

The court found Sam's testimony was not credible on the tribe's position, found good cause to avoid the ICWA placement preference, issued letters of guardianship to the foster parents, and terminated the dependency.

## DISCUSSION

Mother argues the court erred in failing to comply with the ICWA placement preferences because the maternal grandmother was available and identified by the tribe as an extended family member and thus eligible for placement. Mother further contends there was no good cause shown to avoid the placement preference.

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) Once notice to the tribe is given and the dependent minor is found to be an Indian child, various substantive provisions of ICWA apply to the proceedings. (*In re L. B.* (2003) 110 Cal.App.4th 1420, 1427 [superseded by rule on other grounds].) The provision relevant here is placement preference.

ICWA placement preferences apply to both foster care and adoptive placements. In a foster care placement, preference shall be given, in the absence of good cause to the contrary, to a member of the Indian child's extended family or an approved foster placement. (25 U.S.C. § 1915(b); § 361.31, subd. (b).) ICWA adoptive preferences are more restrictive for "any adoptive placement . . . under state law," however, the preferences are still only operative in the absence of good cause to the contrary and are limited to "(1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." (25 U.S.C. § 1915(a); see § 361.31.) The tribe may establish a different order of preference and the parents' wishes as well as social and cultural standards of the tribe are to be considered when selecting a placement. (25 U.S.C. § 1915(c); § 361.31, subds. (d), (e) & (f).)

8

During the reunification period, the court and the Department complied with the preferences for foster care placement, first, because no extended family member was available for placement and, later, when an Indian placement became available, mother wanted the minor placed nearby, thereby creating good cause not to apply the preference. When an adoptive placement was being considered, again there was no extended family member who qualified under state law to be considered for placement. The tribe did not establish a different order of preference, advance the names of any tribal members or indicate that any other Indian families were available. The lack of availability of any placement for this special needs child within the preferences despite the extensive efforts of the Department to find a family member or other qualifying placement supports a finding of good cause not to apply the ICWA placement preference. Substantial evidence supports the juvenile court's finding. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214; *In re G.L.* (2009) 177 Cal.App.4th 683, 697-698.)

Mother argues that the maternal grandmother qualified as a relative placement within the ICWA preferences for an adoptive placement and the Department misled her into believing she could not reapply for placement.

If the maternal grandmother were able to qualify for placement, she would be within the ICWA preferences for adoptive placement. However, ICWA does not purport to require the court to place the minor in a home which does not meet state standards. (25 U.S.C. § 1915(a).) Just as a court is not obligated to adopt a permanent plan selected by the child's tribe without independently assessing the issue of detriment (*In re T.S.* (2009) 175 Cal.App.4th 1031, 1040), the court, in applying the ICWA placement preferences, must still assess the ability of the ICWA preferred permanent placement to afford long-term stability and safety and meet the minor's unique needs (see, e.g., *In re A.A.* (2008) 167 Cal.App.4th 1292, 1329-1330).

The testimony on this point is unclear. The current workers were unaware of any attempt by the maternal grandmother to reapply for placement consideration. Apparently the maternal grandmother queried some prior social worker about reapplication. The record is hazy at best about the applicable time frame for the maternal grandmother to reapply and there is no evidence of the date she asked about reapplying. Given the lack of evidence, it is impossible to determine whether the maternal grandmother asked about reapplication before or after the disability was removed and the year since the prior denial had expired. Based on the record, any claim that the Department misled her about reapplying for placement consideration is speculative.

Mother suggests that much had changed in the years since the maternal grandmother's first application and appeal were denied. Assuming that this is true, it is of little relevance to the issue on appeal. The maternal grandmother did not reapply and the various issues which led to denial of her first application were never reevaluated in light of the alleged changes in her eligibility for an exemption of her criminal conviction, her relationship with mother, and the poor judgment which led to the maternal grandmother's earlier involvement in dependency proceedings. Had the tribe shown any interest in a tribal customary adoption, it could have independently evaluated the maternal grandmother. (*In re A.M.* (2013) 215 Cal.App.4th 339, 348.) It did not.

The court had no basis to conclude that, despite the prior denial of placement, the maternal grandmother would now be eligible under state standards for permanent placement of the minor. The evidence before the court was that the minor, with the assistance and involvement of the current caretakers over many months, was making progress in addressing delays which resulted from in utero alcohol exposure. The current caretakers had shown an ability to meet the minor's needs. The adoptions worker testified removal from their care would be detrimental to the minor. The juvenile court did not err in continuing the minor's placement in a home which could demonstrably provide a safe, stable permanent home.

10

DISPOSITION

The orders of the juvenile court are affirmed.


      ROBIE      , J.


We concur:


      BLEASE      , Acting P. J.


      DUARTE      , J.