Filed 1/30/25  In re S.M. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>J.M.,<br><br>    Defendant and Appellant. | G064503<br><br>(Super. Ct. No. 22DP1032)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Joseph Kang, Judge. Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

J.M. (Father) appeals from an order denying his modification petition under Welfare and Institutions Code section 388, through which he requested custody of his daughter, S.M.[1] He claims the juvenile court applied an incorrect legal standard in assessing his petition by failing to apply a presumption that, as a noncustodial parent, he should receive custody absent a finding of detriment to S.M. Alternatively, he argues the denial was an abuse of discretion even under the court's standard. As explained below, we find no error in the court's ruling and therefore affirm.

FACTS

I.

DETENTION AND SECTION 300 PETITION

In August 2022, four-year-old S.M. was taken into protective custody because of a domestic violence incident between her mother (Mother) and stepfather.[2] At the time, Father had been residing in various hotels for about one year after returning to California from out-of-state. Father had previously been arrested for domestic violence against Mother, and his criminal history also included convictions for theft and violation of a protective order, as well as July 2022 charges for drug possession.

The Orange County Social Services Agency (SSA) then filed a dependency petition under section 300 as to S.M., alleging, inter alia, that Mother had exposed her to domestic violence and may have had an unresolved substance abuse problem. The petition also included allegations as to Father, alleging domestic violence and potential substance abuse and

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother was arrested for assaulting the stepfather. She is not a party to this appeal.

claiming he did not have a safe and stable home for the child. The juvenile court ordered S.M. detained from parental custody. SSA placed her in the care of the maternal grandmother.

Shortly thereafter, Father expressed an interest in services to reunify with S.M. and began visits with her. Visits went well, but Father visited only for one to two hours per week, despite being allotted eight hours per week. SSA provided Father drug-testing information, but he did not complete any drug testing.

## II.

### JURISDICTION AND DISPOSITION HEARING

In November 2022, the juvenile court held a combined jurisdiction and disposition hearing. Father testified and denied that he had a substance abuse problem. He said he had last used alcohol about two months prior to the hearing and drugs about six years prior. He acknowledged a pending charge of methamphetamine possession from July 2022 but said he was fighting that charge and had never used methamphetamine. Father reported that he now had a proper home, worked full time, and was able to provide for S.M.

Following the testimony and argument from counsel, the juvenile court sustained an amended petition, including allegations as to Father's history of domestic violence and potential drug abuse problem. As the court and the parties turned to the disposition, Father asked for custody of S.M., arguing that he was a non-offending parent and stressing that he was employed, could provide for S.M., and was willing to test for drugs. Nevertheless, the court declared S.M. a dependent child, and found "by clear and convincing evidence" that her removal from parental custody was necessary under section 361, subdivision (c)(1), and that placement with the

3

parents would be "detrimental." It ordered reunification services for Father and Mother. Father's case plan included random drug testing or a drug-testing patch, as SSA deemed appropriate. The court ordered that he be allowed supervised visits with S.M.

## III.

### REUNIFICATION PERIOD

S.M. remained with the maternal grandmother and reported that she felt safe and happy. By April 2023, Father was visiting with S.M., and the maternal grandmother reported that the child had a close relationship with Father and enjoyed her time with him. Father was enrolled in individual counseling and reported that he had completed a parenting program. SSA instructed Father to participate in random drug testing and referred him to a provider. It also provided him with a referral for a drug-testing patch. However, Father failed to report for any drug testing—he was a "No Show" for 28 different tests—and failed to have the patch applied.

Father's visits subsequently diminished. In mid-May 2023, S.M. reported that she had not seen him and he had not called her. And in late June, the maternal grandmother reported that Father had not been calling the child and had only visited her a few times. Father still failed to undergo drug testing. At a six-month review hearing in July 2023, the juvenile court found that Father had made moderate progress in his case plan and extended reunification services.

In the ensuing period, Father's visits remained inconsistent, but the visits that did take place went well. He acknowledged to SSA that he had increased his alcohol use at the beginning of the dependency proceedings but had since decreased to two or three beers a week. He also admitted he had previously used cocaine to sober himself up to drive but claimed he had not

4

used cocaine in three years. As of October 2023, Father still failed to undergo any drug testing: he had 14 more No Shows and did not arrange to have a patch applied. He reported he had not undergone testing due to "apathy."

In January 2024, at the 12-month review hearing, Father's counsel reported that Father had been undergoing drug testing for his employer and had 23 negative tests. Noting that Father had not been drug testing for SSA and had missed visits with S.M., the juvenile court terminated reunification services and set the matter for a permanency planning hearing under section 366.26.

IV.

FATHER'S SECTION 388 PETITION AND PERMANENCY PLANNING

Father continued to have good visits with S.M., though he remained inconsistent. He still was not drug testing for SSA.

In June 2024, Father filed a modification petition under section 388, seeking custody of S.M.[3] He claimed circumstances had changed because he maintained stable housing and employment, was able to provide for S.M., and tested negative for drugs when testing for his employer. Father asserted that placing S.M. in his care would serve her best interests due to their strong bond.

In August 2024, the juvenile court held a combined hearing on Father's section 388 petition and permanency planning. Following the hearing, the court denied Father's petition. First, the court found that Father failed to establish a change in circumstances. It noted that Father had not

---

[3] As discussed further below, a party petitioning for modification of a court order under section 388 must show both (1) a change of circumstances or new evidence and (2) that the proposed change is in the child's best interests. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1071.)

undergone drug testing for SSA and stated that he never provided proof of any drug testing for his employer. It also found that Father's visits had become more consistent just shortly before the 12-month review hearing. Based on these facts, the court concluded that Father's circumstances were "changing" but not yet "changed." Additionally, the court found that it was in S.M.'s best interests to stay with her maternal grandmother.

Turning to permanency planning, the juvenile court ordered legal guardianship as S.M.'s permanent plan based on her beneficial relationship with Father under section 366.26, subdivision (c)(1)(B)(i). Father filed a timely notice of appeal.[4]

## DISCUSSION

Father claims the juvenile court abused its discretion by denying his section 388 petition. He contends the court applied the wrong legal standard by failing to apply a presumption that he should receive custody of S.M. absent a finding of detriment to the child. Alternatively, Father argues the court was required to grant his petition even under the standard it applied. As discussed below, we conclude that the court applied the correct

---

[4] Father's notice of appeal designated the legal-guardianship order without also checking a box to designate the order denying his section 388 petition. Because the orders were issued at the same hearing and the denial of the section 388 petition was a precondition to the legal-guardianship order, we liberally construe the notice of appeal to include the denial of Father's petition. (*In re Madison W.* (2006) 141 Cal.App.4th 1447, 1449 [liberal construction of notice of appeal from order terminating parental rights encompasses denial of section 388 petition if latter was issued within 60 days before filing of notice of appeal]; *In re J.F.* (2019) 39 Cal.App.5th 70, 77–79 [disagreeing with *Madison W.*'s broad rule but stating that liberal construction was appropriate where orders were issued simultaneously].)

standard and reasonably determined that Father failed to establish changed circumstances.

## I.

### GOVERNING LAW

"Under section 388, a party may petition the court to change, modify, or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence; and (2) the proposed change in the court's previous order is in the child's best interests. [Citations.]" (*In re Carl R., supra*, 128 Cal.App.4th at p. 1071.) The change in circumstances must be substantial (*In re J.M.* (2020) 50 Cal.App.5th 833, 845), and a showing that circumstances are merely in the process of changing is insufficient (*In re Carl R.*, at p. 1072). Following the termination of reunification services, a section 388 petition may be used as an "'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528.)

"We review the summary denial of a section 388 petition for an abuse of discretion. [Citation.] 'A trial court abuses its discretion when it applies the wrong legal standard or its factual findings are not supported by substantial evidence.' [Citation.]" (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.) "When 'the issue on appeal involves the interpretation and proper application of the dependency statutes,' our review is de novo. [Citation.]" (*Ibid.*)

7

ANALYSIS

*A. The Juvenile Court's Legal Standard*

The juvenile court applied the correct legal standard when it denied Father's section 388 petition. Analyzing both required elements under the statute, the court found that: (1) Father had not established the necessary changed circumstances, and (2) it was in S.M.'s best interests to stay with her maternal grandmother. (*In re Carl R., supra*, 128 Cal.App.4th at p. 1071.)

Citing *In re Liam L.* (2015) 240 Cal.App.4th 1068 (*Liam L.*), Father contends that rather than apply section 388's general "best interests" standard, the juvenile court was required to apply a presumption in favor of parental custody. We disagree.

In *Liam L.*, the court explained: "Section 361.2, subdivision (a) requires that a dependant minor who has been removed from his or her custodial parent be placed with the minors' noncustodial parent, if that parent requests custody, unless such placement would be detrimental to the minor['s] [safety, protection, or physical or emotional well-being]. . . . Under the current statutory scheme, a noncustodial parent who requests placement or custody for the first time *after* disposition must file a modification petition under section 388 to make such a request. . . . [G]iven the underlying presumption in California's dependency scheme that a minor should be placed with a noncustodial parent, absent a finding of detriment, such a placement is inherently in the minors' best interests. A noncustodial parent under these circumstances who files a section 388 petition is therefore entitled to custody unless the party opposing placement establishes that placement with the noncustodial parent would be detrimental to the minors'

safety, protection or physical or emotional well-being." (*Liam L., supra*, 240 Cal.App.4th at pp. 1073–1074, fn. omitted.) Thus, under *Liam L.*, a noncustodial parent who requests placement or custody *for the first time after disposition* through a section 388 petition is entitled to the favorable presumption.

But Father did not seek custody for the first time after disposition. He sought custody at the disposition hearing itself. At that time, the juvenile court applied a functionally identical presumption under section 361, subdivision (c), which provides that "[a] dependent child shall not be taken from the physical custody of their parents . . . unless the juvenile court finds clear and convincing evidence" of certain detrimental circumstances. And the court indeed found "by clear and convincing evidence" that vesting custody with the parents would be "detrimental" to S.M, citing subdivision (c)(1). Under this provision, the court may remove a minor from the parents' custody if "[t]here . . . would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the [the parents'] physical custody." (§ 361, subd. (c)(1).)

True, section 361 applies to removal from the custodial parents, whereas Father was a noncustodial parent seeking custody after S.M.'s removal from Mother—a request governed by section 361.2. Yet Father points to no meaningful difference between each provision's detriment analysis, and we discern none. (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303 [discussing similarity between required findings under §§ 361 and 361.2].) Having applied the required presumption and made the required findings at the disposition hearing, the juvenile court was

not required to apply the same presumption again in considering Father's section 388 petition. (Cf. *Liam L., supra*, 240 Cal.App.4th at pp. 1073–1074.) It therefore applied the correct standard.

*B. The Juvenile Court's Ruling*

The juvenile court did not abuse its discretion by denying Father's section 388 petition because Father did not establish changed circumstances. Father claims he established the following changed circumstances: he was able to provide a stable home for S.M. and to meet all her needs, had consistent employment, and regularly drug tested for his employer. But none of these assertions constituted a change in circumstances. Father claimed to have stable housing at the time of the disposition hearing. At the time of that hearing, he was also employed full time and claimed to have sufficient income to meet S.M.'s needs. And at the 12-month review hearing, his counsel reported that he had been undergoing drug testing for his employer and had 23 negative tests.

Unfortunately, Father also reported no change regarding the circumstances that led to the setting of the permanency planning hearing. He still had not submitted to SSA-referred drug testing despite his 2022 drug charge, his history of cocaine use, and his increased alcohol use at the early stages of this case. Nor did Father provide proof of the drug testing he claimed he underwent for his employer. (See *In re G.L.* (2009) 177 Cal.App.4th 683, 698 [juvenile court was entitled to disbelieve witness's testimony].) As noted, Father attributed his failure to test for drugs to "apathy."

The juvenile court found that Father's visits had become more consistent starting shortly before the 12-month review hearing. Based on this showing, the court reasonably concluded that Father's circumstances were

"changing" but not changed. Accordingly, it did not abuse its discretion by denying Father's section 388 petition.[5] (*In re Carl R., supra*, 128 Cal.App.4th at p. 1072.)

DISPOSITION

The juvenile court's order denying Father's section 388 petition is affirmed.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.

---

[5] Because we conclude that Father has not established the required changed circumstances, we need not address his remaining contentions that the requested relief was in S.M.'s best interests.