Filed 10/10/14  In re David D. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DAVID D. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>            v.<br><br>VICKI P. et al.,<br><br>        Defendant and Appellant. | G049925<br><br>(Super. Ct. Nos. DP017642, DP023015)<br><br>O P I N I O N |

        Appeals from orders of the Superior Court of Orange County, Gary G. Bischoff, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant Vicki P.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant Jeffrey D.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Debbie Torrez, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*        \*        \*

Both parents of two minors contend the juvenile court erred in terminating their parental rights pursuant to Welfare and Institutions Code section 366.26, and by not finding the beneficial relationship exception applies.  (All statutory references are to the Welfare and Institutions Code.)  We affirm the orders and findings of the juvenile court.

I

FACTS

Minor David D. was born in 2005, and minor Jacob D.was born in 2011. David was declared a dependent of the Orange County Juvenile Court in 2008 due to the mother's abuse of alcohol, methamphetamine and Valium.  At that time, the children's presumed father, Jeffrey D., appellant in the present appeal, successfully completed all court ordered services, but David's mother, Vicki P., also appellant in the present appeal, did not.  The juvenile court ordered termination of that dependency on January 11, 2011, with physical and legal custody of David ordered to the father who resided with the paternal grandparents at the time.

On September 12, 2012, the two children were taken into protective custody due to allegations of general neglect.  Both parents and the grandparents were living with the children, and the home was considered to be "unhealthy and in 'Hoarding' like conditions."  Items were stacked five to six feet high.  On the front lawn was a sign that said, "Beware of Snake."  Mold and mildew were observed in the bathrooms, and

there was a strong odor of urine coming from one of the bedrooms.

A September 17, 2012, report of a social worker with the Orange County Social Services Agency (SSA) states: "The mother has admitted to using methamphetamines as recent as one week ago and the grandfather recently found bloody needles and packages of syringes in the piles/stacks of items that the children have access to. When [the social worker] was at the home, the father hid in the home the entire time making an interview impossible." The mother "was observed to be jittery, gaunt and extremely thin, with what appeared to be 'fresh' track marks, calluses, and bruising on [her] arms." (Capitalization omitted.)

The social worker's report lists 35 contacts between the mother and the justice system between 1997 and 2010. Some of the contacts were for arrests for various crimes and some were for probation violations. The report lists 23 justice system contacts for the father between 2003 and 2012, also for various crimes and probation violations.

The parents have a history of verbal and physical domestic violence. The children have been present and witnessed the altercations. Police were called to the home five times for domestic disturbances. At one point, the mother was diagnosed with oppositional defiance disorder. She twice threatened to kill herself.

In an April 30 report to the court, a social worker states: "On February 14, 2013, the mother reported that she is moving out of the paternal grandmother's home as the father had threatened to kill her." The report also states: "The mother and father have had minimal participation in their case plan services. The parents have also done a poor job in contacting and communicating with the undersigned in requesting help with referred services. As of April 04, 2013, the parents have failed to drug test, and are minimally participating in Court ordered services."

David was reported to be consistently disruptive in his foster home, including hitting, kicking, lying, stealing, and at one point urinating on one of his foster

siblings. The foster mother reported she could no longer manage him. In June and July 2013, both children were placed with his paternal grandmother, after it was determined that lack of cleanliness of the home no longer presented a danger.

Thereafter, a social worker became concerned the paternal grandmother was unable to protect the children as unauthorized contacts with the parents were suspected. On September 11, 2013, the court ordered the paternal grandmother not to allow contact at home by either the mother or the father for any reason. But on October 3, 2013, a social worker witnessed both parents at the residence. The social worker then spoke with a neighbor who reported seeing either the mother or the father at the grandmother's residence almost every day.

On October 4, the children were placed in Orangewood Children's Home, and on October 11, 2013, they were placed with a paternal cousin in Northern California. These new foster parents expressed a desire to adopt both children. David was enrolled in a private school, and the foster parents said they intended to ensure the children are in a loving and caring home.

As to visitation, in the last two months of 2012, both parents missed multiple scheduled visits. During the first half of 2013, they missed seven visits, and arrived late or left early for others. Then they missed the August 11 and September 14, 2013 visits. After the children were removed from their grandmother's house and placed in Orangewood Children's Home on October 4, 2013 and then placed with relatives in Northern California on October 11, 2013, they received a card from their mother on October 29. On November 7, 10 and 14, 2013, they received telephone calls from their parents. After that, the parents stopped calling, and as of December 11, 2013, the record states they made no effort to call their children.

After conclusion of a hearing pursuant to section 366.26, the juvenile court stated: "The children are continued dependents of the Orange County Juvenile Court. I find, by clear and convincing evidence, that it is likely that the children will be adopted

and that the children are adorable.  I think that that's very well established.  The children, both of them, are adorable kids.  Everybody I've heard loves them.  The people that testified here; the folks that are currently caring for them, so that's not a question. So we, really, are left with this issue of whether or not a parental benefit exception applies." With regard to visitation, the court stated:  "[T]he visitation, clearly, wasn't regular and consistent throughout the course of this case."  Stating that it appeared the visits were "very pleasant and enjoyable," the court stated:  "It's very clear to me, however, that the real — the real attachment for David in particular wasn't the parents, but it was the grandmother.  And when asked about where he would like to live, the first name that popped out of his mouth every time was he would like to live with grandma.  And so there's no question to me that he has an affection for the family, but I do believe that to the extent that there was a parental relationship, I believe that that relationship was more towards grandma than it was for the parents.  [¶] Having said that, the court doesn't find that the parents have been successful in producing evidence to indicate that the benefit that the children would enjoy as a result of continued contact with the parents would outweigh the benefit that the children would have as a result of a permanent and stable home through adoption, and as a result, the court will order that the parental rights of the children's parents, who are Vicki[] and Jeffrey D[.], be terminated pursuant to 366.26 of the Welfare and Institutions Code."

The juvenile court found the statutory exceptions found in section 366.26 subdivisions (c)(1)(A) and (B) do not apply.  The court continued:  "I find that termination of parental rights would not be detrimental to the children and that, in fact, termination is in the children's best interest."

II

DISCUSSION

*Beneficial Relationship Exception*

The father argues the juvenile court erred "by declining to apply the section

5

366.26, subdivision (c)(1)(B)(i) exception to the termination of father's parental rights over David." The mother contends substantial evidence does not support the juvenile court's finding that the beneficial relationship exception was inapplicable.

County Counsel states: "The court had substantial evidence to conclude that Vicki and Jeffrey did not meet the first prong of regular visitation and contact. The record reveals numerous missed visits, which remained monitored throughout the entire case."

"Under section 366.26, the statutory preference is to terminate parental rights and order the child placed for adoption." (*In re C.B.* (2010) 190 Cal.App.4th 102, 121.) "The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)

Under section 366.26, subdivision (c)(1), if the court makes certain determinations, just as the juvenile court did in this case, "the court shall terminate parental rights unless either of the following applies: [¶] . . . [¶] (B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

This court's review of the juvenile court's findings regarding the benefit exception incorporates both the substantial evidence and abuse of discretion standards of review. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) Under a substantial evidence standard of review, "we do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence, or reweigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a

6

sufficiently substantial nature to support the court's findings. [Citation.]" ( *In re G.L.* (2009) 177 Cal.App.4th 683, 697-698.) "As has been oft repeated, when we review a juvenile court order for abuse of discretion, the "'appropriate test . . . is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' [Citations.]" (*In re Jaden E.* (Sept. 19, 2014, No. A139117) __Cal.App.4th __ [2014 Cal.App.Lexis 854, at p. *20].)

Under the circumstances we find in this record, which show neither regular nor consistent visitation, and that termination of parental rights would not be detrimental to the children based on the beneficial relationship exception, we conclude sufficient evidence supports the juvenile court's orders and findings and that the juvenile court did not abuse its discretion.

III

DISPOSITION

We affirm the orders and findings of the juvenile court.



MOORE, J.

WE CONCUR:



BEDSWORTH, ACTING P. J.



THOMPSON, J.

7