Filed 8/31/23  In re E.F. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re E.F., et al., Persons Coming Under the Juvenile Court Law. | B323174 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP04253) |
| Plaintiff and Respondent, | |
| v. | |
| T.F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Diane C. Reyes, Judge Pro Tempore.  Dismissed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

At a January 21, 2022 jurisdiction and disposition hearing, the juvenile court removed T.F.'s (Father) four children from his custody, placing the children with their mother, K.F. (Mother). Father asks us to reverse the court's findings and orders at that hearing, urging that we must remand the matter because the Department of Children and Family Services (DCFS) failed to comply fully with the inquiry and notice requirements imposed by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.

The record, however, indicates that the children remained in Mother's care throughout the proceedings and that DCFS never pursued a foster care placement for the children or termination of parental rights. Because "ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another," we conclude that Father's appeal is moot and remand is unnecessary. (*In re M.R.* (2017) 7 Cal.App.5th 886, 904 (*M.R.*); see *In re Austin J.* (2020) 47 Cal.App.5th 870, 881, fn. 5 (*Austin J.*) [when a court terminates foster care placement and returns a child to a parent's custody, the "question whether to reverse the prior order based on noncompliance with ICWA is . . . moot"].) We therefore dismiss the appeal.

## FACTUAL AND PROCEDURAL SUMMARY[1]

### A.    *Overview*

Father and Mother share four adopted children:  E.F. (age 13), K.F. (age 12), J.F. (age 11), and A.F. (age 9) (collectively, the children).

On September 9, 2021, DCFS filed a Welfare and Institutions Code section 300[2] petition alleging that Father's mental health issues and the parents' history of domestic violence placed the children at risk of harm.  The petition alleged, inter alia, that Father had "brandished a gun at . . . [M]other, while the children were in the family home," and that his "mental and emotional problems," including "suicidal ideation, . . . endanger[ed] the children's physical health and safety."  The petition alleged further that Mother had failed to protect children from Father.

The addendum report filed in connection with the petition indicated that DCFS had not detained the children from Mother, and recommended that the children remain in her care.  The report recommended further that the juvenile court detain the children from Father and permit him monitored visitation.

At the September 14, 2021 detention hearing, the juvenile court adopted DCFS's recommendation, ordering continued placement of the children with Mother and detention of the children from Father.  The court also ordered monitored visitation for Father and granted Mother's request for a temporary restraining order

---

[1] As Father's sole argument on appeal concerns the duties of inquiry and notice imposed by ICWA and related California law, we limit our factual and procedural summary accordingly.

[2] Unless otherwise specified, all statutory references are to the Welfare and Institutions Code.

against Father. The court then set the jurisdiction and disposition hearing for November 1, 2021.

In advance of the scheduled hearing, DCFS submitted an October 15, 2021 jurisdiction and disposition report in which it recommended that the juvenile court sustain the section 300 petition and that the children remain in Mother's care. DCFS recommended further that the court order family maintenance services for Mother and the children and enhancement services for Father. In an October 27, 2021 last minute information filing for the court, DCFS reported that both parents were participating in services and reiterated the recommendations in its October 15, 2021 report.

The court subsequently continued the jurisdiction and disposition hearing to January 21, 2022. In advance of the hearing, DCFS submitted a January 19, 2022 last minute information filing providing new information relevant to concerns over Mother's behavior, but which did not alter the recommendations in the October 15, 2021 jurisdiction and disposition report.

At the January 21, 2022 jurisdiction and disposition hearing, the juvenile court sustained the section 300 petition, with certain amendments,[3] and ordered the continued removal of the children from Father. The court further ordered the children's continued placement with Mother, services for both parents, and monitored visitation for Father. The court then set a hearing on possible transfer of the case to Riverside County for February 18, 2022, and set a section 364 hearing for July 22, 2022.

---

[3] The record does not contain a copy of the amended petition. The transcript of the January 21, 2022 hearing, however, reflects that the juvenile court amended the petition by, inter alia, striking the allegation that Mother failed to protect the children from Father.

4

Father filed a timely notice of appeal from the court's findings and orders at the January 21, 2022 hearing that same day.

## B.  *ICWA Proceedings*

Throughout the underlying dependency proceedings, Father disclaimed any Indian[4] heritage.  The ICWA child inquiry attachments (Judicial Council Forms, form ICWA-010(A)) appended to the section 300 petition indicate that, at the time of the petition's filing, DCFS had "no reason to believe the child[ren] [were] or [might] be . . . Indian child[ren]."  In addition, Father submitted a parental notification of Indian status form (Judicial Council Forms, form ICWA-020 (ICWA-020 form)) indicating that none of the form's enumerated indicators of Indian status applied to him.

Mother, however, attested in her ICWA-020 form that she might be a member of, or eligible for membership in, a Cherokee tribe through her maternal grandmother.  At the September 14, 2021 detention hearing, the juvenile court therefore found ICWA inapplicable as to Father, but ordered DCFS to investigate Mother's claim of possible Indian ancestry by "interview[ing] maternal relatives, specifically the maternal grandmother, regarding [Mother's] possible Cherokee heritage."  The court ordered further that DCFS provide ICWA notice to the Cherokee tribes and to the Bureau of Indian Affairs (BIA).

In its subsequent October 15, 2021 jurisdiction and disposition report, DCFS indicated its belief that ICWA did not apply because Mother stated during an October 12, 2021 follow-up interview that, although she had "heard there [was] lineage approximately [seven]

---

[4] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

generations ago, . . . no living relative [was] registered or affiliated with any tribe." The report noted further that "the children are not biologically related to . . . [M]other and blood is used by American Indian tribes to determine lineage." The report did not state whether DCFS had interviewed maternal grandmother or whether it had provided notice to the Cherokee tribes or the BIA. Although the report noted that DCFS had interviewed a maternal aunt, the interview summary did not reflect that DCFS made any inquiry of her concerning possible Indian ancestry.

The juvenile court does not appear to have made any further ICWA findings following DCFS's submission of the October 15, 2021 report.

## DISCUSSION

Father's sole contention on appeal is that DCFS failed to comply fully with ICWA's inquiry and notice requirements by (1) neglecting to interview the children's adoptive and biological extended family members concerning possible Indian ancestry, and (2) purportedly ignoring the juvenile court's instruction to provide notice to the Cherokee tribes and the BIA. He urges that, as a result of these alleged failures, we either should reverse or conditionally affirm the juvenile court's findings and orders at the January 21, 2022 hearing and then remand the matter for ICWA compliance. We disagree.

"Although ICWA empowers an Indian child's tribe to intervene in any 'Indian child custody proceeding' [citations], it is not implicated in every dependency case in which the child may have some degree of Native American heritage." (*In re A.T.* (2021) 63 Cal.App.5th 267, 274 (*A.T.*), citing §§ 224, subd. (b), 224.4; 25 U.S.C. § 1911(c).) "Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices

6

that resulted in the separation of large numbers of Indian children and their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) ICWA therefore applies only " 'when child welfare authorities seek permanent foster care or termination of parental rights [leading to adoption].' " (*M.R.*, *supra*, 7 Cal.App.5th at p. 904; see *A.T.*, *supra*, 63 Cal.App.5th at p. 274.)

Here, DCFS never pursued a foster care placement for the children or termination of parental rights, and the children remained in Mother's care from the outset of the proceedings through the January 21, 2022 jurisdiction and disposition hearing. ICWA thus did not apply to the proceedings, and we therefore are not persuaded that any failure by DCFS to comply with its ICWA duties requires remand. (See *A.T.*, *supra*, 63 Cal.App.5th at p. 275 [concluding ICWA inapplicable where "[n]either the court, the [child welfare authorities], nor any other party sought to have [the child] placed in foster care or pursued any placement other than with [the] [f]ather"]; *M.R.*, *supra*, 7 Cal.App.5th at p. 904 ["ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another"]; *In re K.L.* (2018) 27 Cal.App.5th 332, 339 ["[n]othing in the statutory language suggests that . . . ICWA applies when custody of an Indian child is transferred from one parent to another parent"].)

Father's two remaining arguments do not convince us otherwise. First, he urges that we must remand the matter because "the juvenile court affirmatively ordered compliance with . . . ICWA," and DCFS never complied with that order. But given our conclusion that ICWA did not apply to the underlying dependency proceedings, we fail to see why DCFS's purported failure to comply with the juvenile court's order requires remand.

7

Second, citing the language of California Rules of Court, rule 5.480, Father argues that "ICWA actually 'applies to all proceedings involving Indian children that **may** result in an involuntary foster care placement.' "[5]  He urges that ICWA therefore applies here because the underlying dependency proceedings remain ongoing and "involuntary removal of the children [thus] remains a possibility."

Father, however, "points us to no cases holding ICWA applicable due to a merely theoretical possibility that a parental placement by the social welfare agency could fall through."  (*A.T.*, *supra*, 63 Cal.App.5th at p. 275.)  *In re G.L.* (2009) 177 Cal.App.4th 683, on which Father relies, does not so hold.  *G.L.* addresses the rights ICWA affords to a nonparent, Indian custodian and merely cites in a footnote the text of California Rules of Court, rule 5.480 on which Father's argument hinges.  (See *G.L.*, *supra*, 177 Cal.App.4th at p. 692, fn. 3.)  Moreover, Father fails to distinguish the First District's opinion in *A.T.*, which considered and rejected precisely the argument he advances here.  (*A.T.*, *supra*, 63 Cal.App.5th at pp. 274–275 [rejecting argument that, because a dependency case "*could* have" resulted in a foster or adoptive placement, ICWA applies even where a child is placed with a parent].)

Accordingly, we conclude that ICWA did not apply to the underlying dependency proceedings, and the question whether to remand the matter for ICWA compliance therefore is moot.  (*M.R.*,

---

[5] We note that Father has misquoted California Rules of Court, rule 5.480.  It does not state that ICWA applies to "*all* proceedings involving Indian children that may result in an involuntary foster care placement."  (Italics added.)  Rather, the rule provides that the chapter of the California Rules of Court addressing ICWA applies to "most" such proceedings.  (Cal. Rules of Court, rule 5.480.)

*supra*, Cal.App.5th at p. 904; *Austin J.*, *supra*, 47 Cal.App.5th at p. 881, fn. 5.)

## DISPOSITION

The appeal is dismissed as moot.
<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.